# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| MINING PROJECT WIND DOWN HOLDINGS INC. (f/k/a Compute North Holdings, Inc.), *et al.*,[1] | Case No. 22-90273 (MI) |
| Debtors. | (Jointly Administered) |

|  |  |
|---|---|
| MINING PROJECT WIND DOWN LLC (f/k/a Compute North LLC) and MINING PROJECT WIND DOWN HOLDINGS INC. (f/k/a Compute North Holdings, Inc.), *et al.*, | |
| Plaintiffs, | Adversary Proceeding No. 13-_____ |
| v. | |
| RK MISSION CRITICAL, LLC, | |
| Defendant. | |

## DEBTORS' ADVERSARY COMPLAINT AGAINST RK MISSION CRITICAL, LLC

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Debtors' service address for the purposes of these chapter 11 cases is 300 North LaSalle, Suite 1420, Chicago, Illinois 60654.

Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.), Mining Project Wind Down LLC (f/k/a Compute North LLC) and their affiliated debtors and debtors-in-possession in the above captioned chapter 11 cases as set forth in footnote one herein (collectively, the "Debtors", or the "Plaintiffs") hereby allege, upon their own knowledge or upon information and belief, as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and (e). The Plaintiffs confirm their consent to the entry of a final order by the Court in connection with this Complaint to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (F).

3. Venue in this district is proper under 28 U.S.C. § 1409(a).

4. This adversary proceeding is commenced pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure and sections 105, 542, 547, 551 and 553, of title 11 of the United States Code (the "Bankruptcy Code").

## PARTIES

5. The Plaintiffs are the Debtors and Debtors-In-Possession in the above captioned Chapter 11 bankruptcy cases (the "Chapter 11 Cases") with their principal place of business in Chicago, Illinois.

6. RK Mission Critical LLC, a Colorado limited liability company ("RKMC" or the "Defendant"), manufactures and sells, *inter alia*, crypto currency mining containers, with its principal place of business in Aurora, Colorado.

**GENERAL ALLEGATIONS**

I. **Preferential Transfers.**

7. Debtor Mining Project Wind Down LLC (f/k/a Compute North LLC) ("MPWD LLC") and RKMC are parties to that certain teaming agreement, dated as of April 20, 2020 (collectively with the Standard Terms and Conditions of Sale, Revision November 2020 referenced in order forms thereunder, (the "Terms"), as amended, supplemented, or otherwise modified from time to time, the "Teaming Agreement"), under which RKMC agreed to provide, and MPWD LLC agreed to accept, the assistance of RKMC in designing, developing and manufacturing modules for MPWD LLC's business. The Teaming Agreement is a valid and enforceable contract, governed by, and construed and enforced in accordance with, the substantive laws of the State of Colorado.

8. On or about December 21, 2021, MPWD LLC executed a purchase order (the "Purchase Order") to purchase 247 modular containers from RKMC at a price per unit of $325,000.00.

9. The Purchase Order was governed by and subject to, and incorporated by reference, the Terms. Under Section 10 of the Terms, MPWD LLC granted RKMC "a security interest in any Goods provided by RKMC and all attachments, replacements and proceeds thereof, to secure Buyer's performance hereunder and payment of the purchase price, interest on any past-due amounts as set forth in Section 2 and the costs of collection, including reasonable attorney's fees."

10. Between April 22 and July 11 of 2022, RKMC delivered 85 containers to MPWD LLC (collectively, the "Delivered Containers"). At the time the Delivered Containers were actually delivered, RKMC had not filed a UCC-1 financing statement to perfect its security interest in the containers.

11. In the summer 2022, the Plaintiffs' financial condition worsened. Upon information and belief, RKMC was aware of the Plaintiffs' deteriorating financial condition.

12. On or about July 26, 2022, RKMC filed a UCC-1 financing statement (the "July 26 Financing Statement") against MPWD LLC with the secretary of state of the State of Delaware. The July 26 Financing Statement purported to perfect a security interest in "[a]ll goods sold by [RKMC] and delivered to [MPWD LLC] including, without limitation, all Goods sold by [RKMC] and delivered to Debtor hereafter, wherever located …", including the Delivered Containers.

13. On July 28, 2022, RKMC filed a UCC-3 statement (the "UCC-3", and collectively with the July 26 Financing Statement, the "Financing Statements") amending the collateral description contained in the July 26 Financing Statement to provide a specific list of containers that were to be subject to RKMC's security interest. The effect of the UCC-3 was to render unperfected RKMC's security interest in containers RKMC had delivered to MPWD LLC other than those listed in the UCC-3.

14. On September 22, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the Chapter 11 Cases.[2] The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

15. The filing of the Financing Statements occurred less than ninety (90) days prior to the Petition Date.

16. The filing of the July 26 Financing Statements, and the purported perfection of

---

[2] Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, the events leading to the commencement of these Chapter 11 Cases are set forth in detail in the *Declaration of Harold Coulby, Chief Financial Officer and Treasurer of the Debtors, in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 22] (the "First Day Declaration").

RKMC's security interest as set forth therein, was a transfer within the meaning of 11 U.S.C. §§ 101(54) and 547 (the "First Transfer").

17. The filing of the UCC-3, to the extent it purported to perfect a security interest in any of the Debtors' property, was a transfer within the meaning of 11 U.S.C. §§ 101(54) and 547 (the "Second Transfer", and together with the First Transfer, the "Transfers").

18. The Transfers occurred more than thirty (30) days after the delivery of some or all of the Delivered Containers.

19. Upon the commencement of the Chapter 11 Cases, the Debtors' interest in the Delivered Containers became property of the Debtors' estates.

## II.  Specialty Fans.

20. Prior to the Petition Date, in the ordinary course of the Debtors' business, the Debtors regularly purchased modular containers from RKMC which housed all of the components of the Debtors' data centers to facilitate its hosted cryptocurrency mining services. Such containers were outfitted, in part, with fans designed to help cool the cryptocurrency mining equipment of the Debtors' customers. The purchase, construction and delivery of such containers and corresponding parts were governed by and subject to, and incorporated by reference, the Terms. Certain of the work contracted with RKMC dealt with the construction and development of the Debtors' planned data center facility in Minden, Nebraska (the "Minden Facility").

21. On April 6, 2022, RKMC issued a change order (the "Change Order") to furnish the Minden Facility with 266 fans equipped with nylon blade aero-acoustical low sound impellers (the "Specialty Fans") for a total aggregate price of $307,496.00. The Change Order was approved and executed by the Debtors on April 12, 2022. Also on April 12, 2022, RKMC provided the Debtors with an application for payment which detailed the net change of the original contract sum

to account for the added costs associated with the construction and delivery of the Specialty Fans. On May 15, 2023, the Debtors paid for the Specialty Fans, as part of a larger payment to RKMC totaling $1,742,600.00. To date, the Debtors have not received possession of the Specialty Fans, at the Minden Facility or otherwise.

22. On November 19, 2022, the Debtors entered into that certain asset purchase agreement, by and between Foundry Digital LLC ("Foundry") and the Debtors (the "Foundry APA"). Pursuant to the Foundry APA, the assets to be acquired included, in part, the Specialty Fans. On November 22, 2022, the Court entered an order approving the Foundry APA and the transactions contemplated thereunder (the "Foundry Sale") [Docket No. 531]. The Foundry Sale closed on December 12, 2022. *See Notice of Closing of Sale to Foundry Digital LLC and Cancellation of Hearing Scheduled for December 12, 2022 at 4:30 P.M.* [Docket No. 642].

### III.   RKMC Proof of Claim.

23. On November 20, 2022, RKMC filed a proof of claim in the Chapter 11 Cases against Debtor Mining Project Wind Down Holdings Inc. (f/k/a Compute North Holdings, Inc.) (the "RKMC Proof of Claim").[3] The RKMC Proof of Claim seeks alleged damages in an aggregate total amount of $64,480,618.00 (the "Alleged Damages"). The Alleged Damages, in part, consist of (i) unpaid invoices on delivered goods, (ii) the contractual value of certain modular containers that were cancelled by the Debtors (the "Undelivered Containers"), and (iii) the contractual value of certain long lead items and materials ordered by the Debtors, yet never delivered by RKMC (the "Undelivered Materials", and, together with the Undelivered Containers, the "Undelivered Goods").

---

[3] RKMC also filed a substantially identical proof of claim against MPWD LLC (the "Second Proof of Claim"). Separate from this Complaint, the Debtors have filed an objection to the Second Proof of Claim, seeking to disallow it as duplicative of the RKMC Proof of Claim. *See Debtors First Omnibus Objection to Certain Proofs of Claim (Amended Claims, Duplicate Claims)* [Docket No. 814].

24. Pursuant to the RKMC Proof of Claim, the total amount under the purchase order governing the Undelivered Containers is $80,275,000.00 (the "CN PO"). The CN PO was governed by and subject to, and incorporated by reference, the Terms. According to the RKMC Proof of Claim, the total amount outstanding under the CN PO attributable to containers that were ultimately cancelled and not delivered is $52,650,000.00. In connection with the CN PO, the Debtors provided RKMC with multiple deposits representing an aggregate total of 30% of the total remaining amount outstanding thereunder, which totaled $15,795,000.00 (collectively, the "Containers Deposits"). With respect to the CN PO, RKMC claims that the Debtors are liable in amount of $36,855,000.00, which represents the full amount outstanding under the CN PO, less the amount of the Containers Deposits.

25. Pursuant to the RKMC Proof of Claim, the total amount under the purchase orders governing the Undelivered Materials is $12,150,368.00 (the "CN02 POs", and, together with the CN PO, the "POs"), which, according to the RKMC Proof of Claim, remains fully outstanding. The CN02 POs were governed by and subject to, and incorporated by reference, the Terms. In connection with CN02 POs, the Debtors provided RKMC with multiple deposits representing an aggregate total of 50% of the total remaining amount outstanding thereunder, which totaled $6,075,184.00 (collectively, the "Materials Deposits", and, together with the Containers Deposits, the "Deposits"). With respect to the CN02 POs, RKMC claims that the Debtors are liable in amount of $6,075,184.00, which represents the full amount outstanding under the CN02 POs, less the amount of the Materials Deposits.

**FIRST CLAIM FOR RELIEF**
**(Avoidable transfer under 11 U.S.C. § 547(b))**

26. The Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Complaint.

27. Section 547 of the Bankruptcy Code authorizes a debtor-in-possession to avoid a preferential transfer of "an interest of the debtor in property" if five conditions are met. First, the transfer must be to or for the benefit of a creditor. 11 U.S.C. § 547(b)(1). Second, the transfer must be for or on account of an antecedent debt owed by the debtor before such transfer was made. 11 U.S.C. § 547(b)(2). Third, the transfer must have been made while the debtor was insolvent. 11 U.S.C. § 547(b)(3). Fourth, the transfer must have been made during the 90 days immediately before the filing of the bankruptcy petition, or if the transfer was to an insider, as defined by the Bankruptcy Code, the transfer must have been made during the year immediately before the filing of the bankruptcy petition. 11 U.S.C. § 547(b)(4). Finally, the transfer must have enabled the creditor to whom the transfer was made (or for whose benefit the transfer was made) to receive more for its claim than such creditor would have received under the distribution provisions of the Bankruptcy Code if the case were a liquidation case under chapter 7 and the transfer in question had not been made. 11 U.S.C. § 547(b)(5)(A) — (C).

28. The determination of whether the Transfers are preferential pursuant to 11 U.S.C. § 547(b) is made as of the Petition Date.

29. The Transfers were made to or for the benefit of RKMC, a creditor of the Debtors.

30. The Transfers were made for or on account of an antecedent debt owed by the Debtors before the Transfers were made.

31. The Transfers were made while the Debtors were insolvent.

32. The Transfers were made on or within 90 days prior to the Petition Date.

33. If not avoided, the Transfers would enable RKMC to receive more than RKMC would have received in a chapter 7 case of the Debtors if the Transfer had not been made and RKMC had received payment of its debt to the extent provided by the provisions of the Bankruptcy

Code.

34. The Transfers to RKMC on or within 90 days of the Petition Date constitute preferential transfers pursuant to 11 U.S.C. § 547(b).

35. The Transfers may be avoided as to some or all of the Delivered Containers even though they purported to create a security interest in the Delivered Containers because such security interest was not perfected on or before thirty (30) days after the Debtors received possession of some or all of the Delivered Containers pursuant to 11 U.S.C. § 547(c)(3)(B).

36. Because the Transfers are preferential, the Plaintiffs may avoid the security interest of RKMC in the Delivered Containers under the provisions of 11 U.S.C. § 547(b).

**WHEREFORE**, the Plaintiffs respectfully request that the Court enter judgment in its favor and against RKMC, avoiding the Transfers and any purported security interest granted by the Plaintiffs to RKMC pursuant to 11 U.S.C. § 547(b), and granting such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
**(Preservation of lien under 11 U.S.C. § 551)**

37. The Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Complaint.

38. If the Transfers and any purported security interest granted thereby are avoided pursuant to 11 U.S.C. § 547(b), they becomes property of the Debtors' estates.

39. The Plaintiffs therefore seek a determination that the avoided Transfers are preserved for the benefit of the Debtors' estate pursuant to 11 U.S.C. § 551.

**WHEREFORE**, the Plaintiffs respectfully request that the Court enter judgment in its favor and against RKMC (a) preserving the avoided Transfers and any purported security interests

or liens granted to RKMC by the Plaintiffs for the benefit of the Debtors' estates pursuant to 11 U.S.C. § 551; and (b) granting such other relief as the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
### (Turnover under 11 U.S.C. § 542(a))

40. The Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Complaint.

41. Pursuant to 11 U.S.C. § 542, "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

42. As previously stated, the Debtors paid for the procurement of the Specialty Fans, which were never delivered to the Debtors and remain in the possession of RKMC.

43. The Specialty Fans constitute property of the Debtors' estates that the Debtors may use, sell, or lease under section 363 of the Bankruptcy Code. As such, RKMC is an entity other than a custodian who is "in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title," i.e., the Specialty Fans, in violation of 11 U.S.C. § 542. *Id*.

44. Thus, RKMC must "deliver to the trustee, and account for" the Specialty Fans. *Id*.

**WHEREFORE**, pursuant to § 542 of the Bankruptcy Code, and as further permitted by § 105 of the Bankruptcy Code, the Plaintiffs respectfully request that the Court enter judgment in its favor and against RKMC (a) directing RKMC to turn over and immediately transfer the Specialty Fans to the Debtors; and (b) granting such other relief as the Court deems appropriate.

### FOURTH CLAIM FOR RELIEF

**(Replevin under U.C.C. § 2-716)**

45. The Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Complaint.

46. If the Court finds insufficient basis to direct RKMC to turn over and transfer possession of the Specialty Fans to the Debtors under § 542 of the Bankruptcy Code, alternatively, the Court should find that the Debtors possess a right of replevin with respect to the Specialty Fans pursuant to § 2-716 of the Uniform Commercial Code (the "UCC"), as adopted in Colorado.

47. Section 2-716 of the UCC provides that a buyer of goods, in certain circumstances, may possess a right of specific performance or replevin. UCC § 2–716. A buyer has a right of replevin "for goods identified to the contract if after reasonable effort he is unable to effect cover for such goods or the circumstances reasonably indicate that such effort will be unavailing or if the goods have been shipped under reservation and satisfaction of the security interest in them has been made or tendered." UCC § 2-716(3).

48. As stated above, The Teaming Agreement is a valid and enforceable contract, governed by, and construed and enforced in accordance with, the substantive laws of the State of Colorado. The Colorado Revised Statutes, which concerns the sale of goods under the UCC as adopted in Colorado, specifically provides a right of replevin as follows:

> "The buyer has a right of replevin for goods identified to the contract if after reasonable effort he or she is unable to effect "cover" for such goods or the circumstances reasonably indicate that such effort will be unavailing or if the goods have been shipped under reservation and satisfaction of the security interest in them has been made or tendered. In the case of goods bought for personal, family, or household purposes, the buyer's right of replevin vests upon acquisition of a special property, even if the seller had not then repudiated or failed to deliver."

CO Rev Stat § 4-2-716(3).

49. The Specialty Fans were specifically configured and constructed for installation and use at the Minden Facility. As noted in the Change Order, the Specialty Fans were identified

to the contract to be equipped with specific low sound impellers for their intended use at the Minden Facility. The standard fans traditionally used at the Debtors' data center facilities were to be, pursuant to the Change Order, swapped out for the installation of the Specialty Fans in the containers located at the Minden Facility.

50.  RKMC was contracted, through the Change Order, to manufacture and construct the Specialty Fans to the unique specifications needed by the Debtors at the Minden Facility. As such the Debtors would not be able to effect cover for the Specialty Fans.

**WHEREFORE**, pursuant to § 2-716 of the UCC, as adopted by Colorado, the Plaintiffs respectfully request that the Court enter judgment in its favor and against RKMC (a) directing RKMC to turn over and immediately transfer the Specialty Fans to the Debtors; and (b) granting such other relief as the Court deems appropriate.

## FIFTH CLAIM FOR RELIEF
**(11 U.S.C. §§ 105(a) and 553)**

51.  The Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Complaint.

52.  If the Court finds insufficient basis to direct RKMC to turn over and transfer possession of the Specialty Fans to the Debtors under § 542 of the Bankruptcy Code or § 2-716 of the UCC, alternatively, the Court should direct RKMC to deliver the Specialty Fans under §§ 105(a) and 553 of the Bankruptcy Code.

53.  Section 553(a) of the Bankruptcy Code provides, subject to certain exceptions, that the Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553.

54. Setoff is only available to the extent a debtor and creditor share mutual obligations. *See In re Fieldwood Energy LLC*, 2022 WL 385919, at 3 (Bankr. S.D. Tex. Feb. 8, 2022) ("To set off one demand against another, demands must mutually exist between the same parties").

55. RKMC may not hold the Specialty Fans, for which it has been fully paid, while simultaneously attempting to setoff its prepetition monetary claims against goods that it possesses and for which the Debtors have paid in full for.

56. Under these circumstances, the mutuality prong, as required under § 553 of the Bankruptcy Code, does not exist.

**WHEREFORE**, pursuant to § 553 of the Bankruptcy Code, and as further permitted by § 105 of the Bankruptcy Code, the Plaintiffs respectfully request that the Court enter judgment in its favor and against RKMC (a) directing RKMC to turn over and immediately transfer the Specialty Fans to the Debtors; and (b) granting such other relief as the Court deems appropriate.

### SIXTH CLAIM FOR RELIEF
**(Breach of Contract or, alternatively, Unjust Enrichment)**

57. The Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Complaint.

58. If the Court finds insufficient basis to direct RKMC to transfer possession of the Specialty Fans to the Debtors under §§ 105(a), 542 or 553 of the Bankruptcy Code or § 2-716 of the UCC, alternatively, the Court should find that the Debtors are entitled to damages as a result of RKMC's breach of the Teaming Agreement.

59. As previously stated, the Teaming Agreement is a valid and enforceable contract.

60. RKMC has breached its obligations under the Teaming Agreement by failing to deliver the Specialty Fans, which the Debtors have provided payment in full for.

61. The Debtors have suffered damages as a direct result of RKMC's breach of the

Teaming Agreement in an amount of not less than $307,496.00.

62. Alternatively, the Court should find that RKMC has been unjustly enriched through its retained possession of the Specialty Fans.

63. The Debtors conferred a benefit on RKMC by providing payment for the Specialty Fans which were never delivered to the Debtors or installed in the Debtors' containers at the Minden Facility.

64. RKMC realized the benefit of the payment for the Specialty Fans.

65. Under the circumstances, it would be inequitable for RKMC to retain the benefit of such payment while maintaining possession of the Specialty Fans.

66. The Debtors have been damaged by RKMC's failure to deliver the Specialty Fans and are entitled to a return of any and all amounts paid to RKMC on account thereof. RKMC should be ordered to disgorge all amounts relating to the payment of the Specialty Fans of not less than $307,496.00.

**WHEREFORE**, the Plaintiffs respectfully request that the Court enter judgment in its favor and against RKMC (a) finding that RKMC has (i) breached is obligations under the Teaming Agreement, or, alternatively, (ii) been unjustly enriched through its continued possession of the Specialty Fans, and, in either case, be ordered to disgorge all amounts relating to the Debtors' payment of the Specialty Fans of not less than $307,496.00; and (b) granting such other relief as the Court deems appropriate.

**SEVENTH CLAIM FOR RELIEF**
**(Objection to RKMC Proof of Claim - U.C.C. § 2-708)**

67. The Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Complaint.

68. A filed proof of claim is deemed allowed, unless a party in interest objects.   11

U.S.C. § 502(a). A properly executed and filed proof of claim constitutes prima facie evidence of the validity and the amount of the claim under section 502(a) of the Bankruptcy Code. FED. R. BANKR. P. 3001(f).

69. To receive the benefit of prima facie validity, however, a proof of claim must assert factual allegations that would entitle the claimant to a recovery. *In re Heritage Org., LLC*, 04-35574 (BJH), 206 WL 6508477, at 8 (Bankr. N.D. Tex. Jan. 27, 2006). Additionally, a claimant's proof of claim is entitled to the presumption of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes at least one of the allegations that is essential to the claim's legal sufficiency. *In re Starnes*, 231 B.R. 903, 912 (N.D. Tex. 1998). Once an allegation is refuted, "the burden shifts to the claimant to prove by a preponderance of the evidence." *In re Congress, LLC*, 529 B.R. 213, 219 (Bankr. W.D. Tex. 2015); see also *Cavu/Rock Props. Project I, LLC v. Gold Star Constr., Inc. (In re Cavu/Rock Props. Project I, LLC)*, 516 B.R. 414, 422 (Bankr. W.D. Tex. 2014). "The ultimate burden of proof always lies with the claimant." *In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006).

70. The RKMC Proof of Claim seeks Alleged Damages of $64,480,618.00, of which $42,930,184.00 pertains to the remaining amount outstanding under the POs, less the Deposits (the "Asserted POs Damages Amount").

71. However, the Asserted POs Damages Amount are excessive and the incorrect measure of damages under the UCC.

72. Pursuant to Section 2–708 of the UCC, "the measure of damages for non-acceptance or repudiation by the buyer is the difference between market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this Article (Section 2–710), but less expenses saved in consequence of the buyer's breach." UCC § 2 –

708(1).

73.     In calculating the Asserted POs Damages Amount, the RKMC Proof of Claim does not comply with Section 2-708 of the UCC in that it does not take into account the market price of the Undelivered Goods and the amount sought under the RKMC Proof of Claim should be reduced by an amount equal to the market price of the Undelivered Goods.

74.     If the RKMC Proof of Claim is not reduced as set forth herein, RKMC will receive a greater recovery to which it is not actually entitled.

**WHEREFORE**, the Plaintiffs respectfully request that the Court enter judgment in its favor and against RKMC (a) reducing the RKMC Proof of Claim in accordance with the foregoing; and (b) granting such other relief as the Court deems appropriate.

Dated: January 20, 2023
      Houston, Texas

/s/ *James T. Grogan III*
**PAUL HASTINGS LLP**
James T. Grogan III (TX Bar No. 24027354)
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone: (713) 860-7300
Facsimile: (713) 353-3100
Email: jamesgrogan@paulhastings.com

-and-

Luc Despins (admitted *pro hac vice*)
Sayan Bhattacharyya (admitted *pro hac vice*)
Daniel Ginsberg (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Email: lucdespins@paulhastings.com
    sayanbhattacharyya@paulhastings.com
    danielginsberg@paulhastings.com

-and-

Matthew Micheli (admitted *pro hac vice*)
Michael Jones (admitted *pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
Email: mattmicheli@paulhastings.com
    michaeljones@paulhastings.com

*Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on January 20, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *James T. Grogan III*
James T. Grogan III